129 T.C. No. 12

UNITED STATES TAX COURT

NEIL JEROME PROCTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2813-06.                 Filed October 10, 2007.

        P and his spouse (S) divorced in December 1993.
The divorce decree required P and S to share equally
their children's uninsured medical and dental costs.
The divorce decree also required P, pursuant to the
Uniformed Services Former Spouses' Protection Act, 10
U.S.C. sec. 1408 (2000), to pay S 25 percent of his
military retirement pay.  The divorce decree did not
indicate whether the payments with respect to P's
military retirement should be included in gross income
or deducted as alimony, or whether such payments were
to terminate upon the death of S.

        P paid S $6,074 in 2002 and deducted the entire
amount as alimony.  R determined, in a notice of
deficiency, that the payments were not alimony and,
therefore, were not deductible.

1.  Held:  P's payments to S relating to his children's dental bills are, pursuant to sec. 71(c)(3),[1] child support.

2.  Held, further, P's payments to S relating to her share of his military retirement pay are alimony and, therefore, deductible pursuant to sec. 215.


Neil Jerome Proctor, pro se.

Pamela L. Mable, for respondent.


OPINION


FOLEY, Judge:  The issues for decision are what portion of certain lump-sum payments made pursuant to a divorce decree qualifies as child support and what portion qualifies as alimony.

Background

Petitioner and Liza Holdman (Ms. Holdman), who were married in 1979, had two children, Dianne and Kimberly.  On December 10, 1993, the Superior Court of Pulaski County, Georgia (Superior Court), entered a Final Judgment and Decree (divorce decree) terminating petitioner and Ms. Holdman's marriage.  The divorce decree required petitioner to pay $675 per month in child support, maintain medical and dental insurance for each child, and share equally with Ms. Holdman any medical and dental costs

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended.

not covered by insurance.  The divorce decree also required petitioner, who was an active member of the U.S. Navy at the time of the divorce, to pay Ms. Holdman, pursuant to the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. sec. 1408 (2000), 25 percent of his disposable retirement pay (retirement payments).

On June 30, 2000, petitioner retired from the U.S. Navy.  In August of the same year, petitioner began receiving his retirement pay, but he failed to make payments to Ms. Holdman as set forth in the divorce decree.  On December 4, 2000, Ms. Holdman initiated a contempt proceeding against petitioner for his failure to comply with the divorce decree.  The Superior Court, on June 26, 2001, ordered (the June 26 order) petitioner to pay $1,463 relating to the children's past dental bills.  The June 26 order also required petitioner to pay $68 a month relating to his portion of Kimberly's then-current dental bills and $321 per month representing Ms. Holdman's share of petitioner's retirement pay.  Petitioner failed to comply with the order.  In response, Ms. Holdman initiated three additional contempt proceedings.

On December 10, 2001, the Superior Court issued an order (the December 10 order) that required petitioner to comply with the June 26 order and decreased the retirement payments to $231

per month.  Pursuant to the December 10 order, petitioner paid $2,774 on May 6, 2002, representing his first payment for his children's uninsured dental expenses and Ms. Holdman's share of his retirement pay.  Petitioner followed that payment, in 2002, with six additional payments of $550 (i.e., totaling $3,300).  Of the $6,074 paid by petitioner in 2002, $2,687 was for his children's uninsured dental expenses.

In July 2003, petitioner filed a Federal income tax return relating to 2002 and deducted, as alimony, $6,074.  In a statutory notice of deficiency, dated November 9, 2005, and relating to 2002, respondent disallowed petitioner's alimony deduction.  On February 7, 2006, while residing in Eastman, Georgia, petitioner filed his petition with the Court.

## Discussion

Petitioner deducted, as alimony, the entire $6,074 paid to Ms. Holdman in 2002.  We must determine what portion, if any, of this amount was attributable to child support and what portion, if any, was attributable to alimony.  Petitioner contends that the entire amount is alimony and is, therefore, deductible.  Respondent contends that none of the amount is deductible because part of it is child support, and the remaining portion, relating to Ms. Holdman's share of petitioner's retirement pay, is a division of marital property and does not qualify as alimony.

## I.  Child Support

An individual may generally deduct payments made to a spouse during the taxable year to the extent those payments are alimony includable in the spouse's gross income.  See sec. 215(a) and (b).  Any payment which the terms of the divorce decree fix as a sum payable for the support of children is not alimony.  See sec. 71(c)(1).  If any payment is less than the amount specified in the divorce decree, to the extent the payment does not exceed the amount required to be paid for child support, such amount shall be considered support.  See sec. 71(c)(3).  Pursuant to the divorce decree, petitioner was required to pay Ms. Holdman $8,000 by the end of 2002 with respect to his children's uninsured medical expenses and Ms. Holdman's share of his retirement pay (i.e., $2,687 relating to his children's uninsured medical expenses and $5,313 relating to Ms. Holdman's share of his retirement pay).  Petitioner started making payments in 2002.  In that year, petitioner made lump-sum payments to Ms. Holdman totaling $6,074 (i.e., $1,926 less than the amount required pursuant to the divorce decree).  Accordingly, $2,687 of the $6,074 paid by petitioner in 2002 is, pursuant to section 71(c)(3), child support and cannot be deducted as alimony.  See Blyth v. Commissioner, 21 T.C. 275 (1953).  We must determine whether the remaining $3,397 is alimony.

II.  <u>Alimony</u>

Respondent contends that the retirement payments are part of a property settlement and do not qualify as alimony.  An individual may generally deduct payments made to a spouse during the taxable year to the extent that those payments are alimony includable in the spouse's gross income.  See sec. 215(a) and (b).  Section 71(a) requires amounts received as alimony to be included in gross income.

In order to qualify as alimony, payments must meet the requirements of section 71(b)(1)(A) through (D).  Ms. Holdman received the retirement payments pursuant to a divorce decree.  Thus, such payments meet the requirements of section 71(b)(1)(A).  In addition, petitioner and Ms. Holdman resided in separate households at the time the payments were made.  Thus, such payments also meet the requirements of section 71(b)(1)(C).  Respondent contends that the retirement payments do not, however, meet the requirements of section 71(b)(1)(B) and (D).

Section 71(b)(1)(B) requires that the divorce instrument "not designate such payment as a payment which is not includible in gross income under this section and not allowed as a deduction under section 215".  Respondent contends that this prong is not met because the divorce decree refers to the payments as part of a division of the marital property.  The classification of a

payment as part of the division of marital property does not, however, preclude the payment from being alimony. See Benedict v. Commissioner, 82 T.C. 573, 577 (1984) (stating that "labels attached to payments mandated by a decree of divorce or marriage settlement agreement are not controlling"). While the designation need not mimic the statutory language of sections 71 and 215, the requirements of subparagraph (B) will generally be met if there is no "clear, explicit and express direction" in the divorce decree stating that the payment is not to be treated as alimony. See Estate of Goldman v. Commissioner, 112 T.C. 317, 323 (1999), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000). The divorce decree does not contain such language. Accordingly, the retirement payments meet the requirements of section 71(b)(1)(B).

Section 71(b)(1)(D) provides that there must be no liability for the payor to make such payments, or for the payor to make substitute payments, after the death of the payee spouse. Respondent contends that the retirement payments fail to meet the requirements of section 71(b)(1)(D) because the divorce decree does not state whether such payments will terminate upon the death of Ms. Holdman. In 1986, Congress amended section 71(b)(1)(D), specifically to remove the requirement that a divorce instrument expressly state that the liability terminates

upon the death of the payee spouse.  See Tax Reform Act of 1986, Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853.  Consequently, section 71(b)(1)(D) is satisfied if the liability ceases upon the death of the payee spouse by operation of law.  Cf. Notice 87-9, 1987-1 C.B. 421.

The divorce decree provides that the retirement payments were ordered pursuant to the USFSPA, which states that

> Payments from the disposable retired pay of a member pursuant to this section shall terminate in accordance with the terms of the applicable court order, but not later than the date of the death of the member or the date of the death of the spouse or former spouse to whom payments are being made, whichever occurs first.

10 U.S.C. sec. 1408(d)(4) (2000).  Accordingly, the retirement payments will terminate, by operation of law, on the date that either petitioner or Ms. Holdman dies, whichever occurs first.[2] Moreover, the USFSPA provides that "Notwithstanding any other provision of law, this section does not create any right, title,

---

[2] The USFSPA provides that a former spouse may serve upon the Secretary of Uniformed Services the divorce decree ordering payments pursuant to the USFSPA.  After receipt of such service, the payments are made directly to the member's spouse.  See 10 U.S.C. sec. 1408(d)(1).  While Ms. Holdman did not serve the Secretary with a copy of the divorce decree or receive payments directly from the Secretary, the payments were ordered "as authorized under the Uniformed Services Former Spouses' Act".  Prior to enactment of the USFSPA, former spouses had no right to receive a portion of a member's military retirement pay.  See McCarty v. McCarty, 453 U.S. 210 (1981).  The USFSPA was enacted to allow courts to award spouses and former spouses an interest in a member's military retirement pay.  See S. Rept. 97-502 (1982).

or interest which can be sold, assigned, transferred, or otherwise disposed of (including by inheritance) by a spouse or former spouse".  10 U.S.C. sec. 1408(c)(2)(2000).  Petitioner has no liability to make such retirement payments after the death of Ms. Holdman.  Thus, the retirement payments meet the requirements of section 71(b)(1)(D).

The retirement payments meet the requirements of section 71(b)(1), and pursuant to section 215, petitioner is entitled to a deduction of $3,387 for alimony payments.[3]

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.

---

[3] In <u>Eatinger v. Commissioner</u>, T.C. Memo. 1990-310, <u>Witcher v. Commissioner</u>, T.C. Memo. 2002-292, and <u>Pfister v. Commissioner</u>, 359 F.3d 352 (4th Cir. 2004), affg. T.C. Memo. 2002-198, the Court treated military retirement payments as property taxable to the former spouse.  In those cases, the Court concluded that the payments were includable in the former spouse's gross income pursuant to sec. 61(a)(11), but did not address whether the payments qualified as alimony, pursuant to sec. 71.  Conversely, in <u>Baker v. Commissioner</u>, T.C. Memo. 2000-164, the Court agreed with respondent that the military retirement payments received by a former spouse qualified as alimony, pursuant to sec. 71.